IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

KATHRYN ANN CAMACHO,

    Plaintiff,

v.	No. 16-cv-1100 SMV

NANCY A. BERRYHILL,[1]
**Acting Commissioner of the Social Security,**

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 17] ("Motion"), filed on April 24, 2017. The Commissioner responded on June 7, 2017. [Doc. 19]. Plaintiff replied on July 18, 2017. [Doc. 20]. The parties have consented to the undersigned's entering final judgment in this case. [Doc. 8]. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that remand is not warranted. Plaintiff fails to show that the Administrative Law Judge's ("ALJ") decision is not supported by substantial evidence or is the product of an incorrect legal standard. Accordingly, the Motion will be denied, and Commissioner's final decision, affirmed.

### Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were

---
[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Courts must meticulously review the entire record, but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While a court may not re-weigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

---

[2] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981; 416.1481. This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

**Applicable Law and Sequential Evaluation Process**

In order to qualify for disability benefits, a claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) she is not engaged in "substantial gainful activity"; *and* (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) her impairment(s) either meet or equal one of the "Listings"[3] of presumptively disabling impairments; *or* (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If she cannot show that her impairment meets or equals a Listing, but she proves that she is unable to perform her "past relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering her residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

## Procedural Background

Plaintiff applied for a supplemental security income and period of disability and disability insurance benefits on November 23, 2009, which was also the date she alleged she became disabled. Tr. 20, 33. Her claims were denied initially and on reconsideration. Tr. 134. Plaintiff requested a hearing before an ALJ. *Id.* ALJ Michelle K. Lindsay held a hearing on February 24, 2012, in Albuquerque, New Mexico, and ultimately denied her claims. Tr. 134, 148. The Appeals Council, however, granted review on February 28, 2014, and remanded the matter to ALJ Lindsay for further proceedings. Tr. 157–59.

ALJ Lindsay held a second hearing on December 5, 2014. Tr. 17. Plaintiff appeared in person and was represented by a non-attorney. *Id.* The ALJ heard testimony from Plaintiff and an impartial vocational expert ("VE"), Leslie J. White. Tr. 17, 93–125. The ALJ issued her unfavorable decision on April 8, 2015. Tr. 33. Initially, the ALJ found that Plaintiff met the insured status requirements through December 31, 2014. Tr. 20. At step one she found that Plaintiff had not engaged in substantial gainful activity since the onset date of her alleged disability. *Id.* Because Plaintiff had not engaged in substantial gainful activity for at least 12 months, the ALJ proceeded to step two. *Id.* There she found that Plaintiff suffered from the following severe impairments: "history of compression fracture of L2 with surgeries including hardware implantation and subsequent removal; depression; anxiety; history of polysubstance abuse; opiate and benzodiazepine dependence." Tr. 20. At step three the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing. Tr. 20–22.

Because none of Plaintiff's impairments met or medically equaled a Listing, the ALJ went on to assess Plaintiff's RFC. Tr. 22–31. The ALJ found that:

> [Plaintiff] has the [RFC] to perform less than the full range of light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b). Specifically, [Plaintiff] is able to lift and/or carry 20 pounds occasionally and 10 pounds frequently; push and/or pull within the strength limitation cited; and can sit, stand[,] and/or walk for six hours out of an eight-hour workday. She can occasionally climb stairs and ramps, balance, stoop, crouch, kneel, and crawl; but can never climb ladders, ropes, or scaffolds. In addition, she has mental limitations that allow her to be able to maintain attention and concentration to perform only routine, repetitive tasks for two hours at a time, without requiring redirection to task, and requires work involving no more than occasional change in the routine work setting; requires a job that involves only occasional contact with the general public.

Tr. 22–23. At step four the ALJ found that Plaintiff could not return to her past relevant work. Tr. 32. Accordingly, the ALJ proceeded to step five, where she relied on testimony by the VE to find that, based on Plaintiff's age, education, work experience, and RFC, she was capable of performing other jobs that exist in significant numbers in the national economy. Tr. 32–33. Plaintiff requested review from the Appeals Council again, but that request was denied on August 3, 2016. Tr. 1. Plaintiff timely filed the instant action on October 5, 2016. [Doc. 1].

## **Analysis**

Plaintiff fails to show reversible error in the evaluation Dr. Sautter's opinion. She also fails to show reversible error at step five or in the ALJ's credibility analysis. The ALJ's decision will be affirmed.

Plaintiff fails to show reversible error in the evaluation of Dr. Sautter's opinion.

Social Security regulations require that, in determining disability, the opinions of treating physicians be given controlling weight when those opinions are well-supported by the medical evidence and are consistent with the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). This is known as the "treating physician rule." *Langley*, 373 F.3d at 1119. The idea is that a treating physician provides a "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations," and therefore, a treating physician's opinion merits controlling weight. *Doyal*, 331 F.3d at 762.

In order to receive controlling weight, treating physician opinions must be both supported by medical evidence and consistent with the record. If not, the opinions may not merit controlling weight but still must be given deference and weighed using the following six factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003); *see* 20 C.F.R. §§ 404.1527(c), 416.927(c). However, not every factor is applicable in every case, nor should all six factors be seen as absolutely necessary. What is absolutely necessary, though, is that the ALJ give good reasons—reasons that are "sufficiently specific to [be] clear to any subsequent reviewers"—for

6

the weight she ultimately assigns to the opinions. *Langley*, 373 F.3d at 1119; *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Branum v. Barnhart*, 385 F.3d 1268, 1275 (10th Cir. 2004).

In sum, when properly rejecting a treating physician's opinion, an ALJ must follow two phases. First, the ALJ must find that the opinion is not supported by medical evidence and/or is not consistent with the record. Second, the ALJ must still give deference to the opinion and weigh it according to the factors listed above. Like all findings, an ALJ's findings in these two phases must be supported by substantial evidence.

Here, Plaintiff argues that the ALJ's evaluation of Dr. Sautter's opinion is inadequate. [Doc. 17] at 16–18. She argues that the ALJ impermissibly collapsed the requisite two-phase analysis into one phase. *Id.* at 17. She argues that the ALJ failed to indicate whether Dr. Sautter's opinion was entitled to controlling weight and, if not, what weight she gave it. *Id.* Further, Plaintiff challenges the ALJ's conclusion that Dr. Sautter's opinion was "inconsistent with the other substantial evidence of record, including treatment notes contained in the record." *Id.* at 18 (quoting Tr. 29). She does not argue that Dr. Sautter's opinion is actually consistent with the record. *See id.* Rather, she complains that the ALJ did not specify what records were inconsistent. *Id.* The Court is not persuaded.

The ALJ explicitly gave "very little weight" to Dr. Sautter's opinion because it was "inconsistent with the other substantial evidence of record, including treatment notes contained in the record." Tr. 29. Defendant argues that Dr. Sautter's opinion, in fact, is inconsistent with the record, and she provides citations to the inconsistent portions. [Doc. 19] at 8. Plaintiff does not disagree; she does not argue that Dr. Sautter's opinion actually is consistent. [Doc. 17]

7

at 16–18; [Doc. 20] at 1–3. Rather, she complains that the ALJ failed to identify the inconsistencies herself. This Court's review would be easier if the ALJ had cited to the specific pages in the record that she found to be inconsistent. But the Court is not aware of any requirement that she do so. The standard of review for this Court is not whether the ALJ cited to substantial evidence to support her findings. The standard is whether substantial evidence actually does support her findings. Defendant has identified portions of the record that she argues are inconsistent with Dr. Sautter's opinion. Plaintiff does not dispute this. Nor does Plaintiff argue—much less show—that substantial evidence does not support the ALJ's finding (that Dr. Sautter's opinion is inconsistent with the record). The ALJ's findings satisfy phase one of the treating physician rule.

Moreover, the ALJ did not stop the treating physician analysis after phase one. She did not impermissibly collapse the two phases. She accorded Dr. Sautter's opinion very little weight and she gave good reasons, which correspond to the *Watkins* factors, for doing so. Tr. 29. For example, she explained that Dr. Sautter attributed some of Plaintiff's limitations to post-traumatic stress disorder, which was "out of his field of expertise," (and which corresponds to the fifth factor). *Id.* The ALJ also explained that Dr. Sautter "noted extreme limitations due to post-lumbar fracture, yet he fully explained to her that her fracture had healed, and he had no explanation for her symptoms," (which corresponds to the third and fourth factors). *Id.* Lastly, the ALJ also found that Plaintiff's own reports of daily activities—including driving a stick shift automobile and riding her bicycle up to six blocks—undermined Dr. Sautter's opinion, (which

corresponds to the third and fourth factors). *Id.* Plaintiff fails to show reversible error in the ALJ's evaluation of Dr. Sautter's opinion.

<u>Plaintiff fails to show reversible error in the
VE's testimony regarding the number of jobs.</u>

To find a claimant not disabled at step five, the ALJ must find that the claimant not only can perform work, but also that such work "exists in *significant numbers* either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B) (emphasis added). A finding of numerical significance "should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992) (internal quotation marks and brackets omitted). In determining whether work exists in "significant numbers," an ALJ can consider many criteria, including but not limited to: "the level of claimant's disability; the reliability of the vocational expert's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on." *Id.* at 1330.

Here, Plaintiff challenges the ALJ's finding that the jobs of marker (Dictionary of Occupational Titles ("DOT") number 209.587-034), page in a library setting (DOT number 249.687-014), and warehouse checker (DOT number 222.687-010) exist in significant numbers in the national economy. [Doc. 17] at 19–21; [Doc. 20] at 3–5. There is no dispute that the VE's testimony at the hearing supports the ALJ's findings as to the numbers of such jobs. Tr. 120 (VE's testimony that in the national economy there are about 269,000 marker jobs, about 16,000 library page jobs, and about 14,000 warehouse checker jobs). Plaintiff, however, argues that the

VE's testimony is unreliable. Indeed, she argues that all VE testimony about the numbers of jobs is unreliable. [Doc. 17] at 19. She speculates that the VE in this case relied on the Standard Occupational Classification ("SOC") used by the Department of Labor Occupational Employment Statistics. She argues that the SOC does not directly correlate to the DOT. Assuming the VE relied on the SOC to arrive at the jobs numbers, therefore, her testimony would be "fraught with error." *Id.* at 19–20. To augment her position, Plaintiff cites to testimony from other cases, in which other VEs gave very different estimates of the numbers of marker and warehouse checker jobs in the national economy. *Id.* at 20. Plaintiff's position is not persuasive.

Even though Plaintiff points to varying numbers of jobs, none is so low that it would not constitute "significant numbers" in the national economy. More to the point, though, Plaintiff does not argue—much less show—that the jobs of marker, library page, and warehouse checker do not exist in significant numbers in the national economy. The ALJ in this case was entitled to rely on the testimony of the VE as to the numbers of jobs that exit in the national economy. *See* 20 C.F.R. §§ 404.1566(e) 416.966(e); Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704, at *2; *Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000). Plaintiff fails to how reversible error in the ALJ's determination that Plaintiff can perform other work that exists in significant numbers in the national economy.

<u>Even assuming a conflict between RFC and the stooping/kneeling
requirement for the job of library page, Plaintiff fails to show reversible error.</u>

Plaintiff argues that the ALJ failed to resolve a conflict between the VE's testimony and the DOT. The VE testified that a person with Plaintiff's RFC could perform the duties of library

page. The job of library page requires frequent stooping and kneeling, but the ALJ restricted her to only occasional stooping and kneeling. [Doc. 17] at 21–22; *see* [Doc. 20] at 4.

Plaintiff fails to show reversible error. Even if there were an unresolved conflict as to the job of page, the other jobs—marker and warehouse checker—cited by the ALJ carry the Commissioner's burden at step five.

Plaintiff fails to show reversible error in the ALJ's credibility analysis.

Plaintiff argues that the ALJ impermissibly evaluated her character instead of Plaintiff's description of her symptoms. [Doc. 17] at 22–25; [Doc. 20] at 6–7. Plaintiff's argument is based on the rescission of SSR 96-7p and the issuance of SSR 16-3p in its place. SSR 16-3p "clarifies that subjective symptom evaluation is not an examination of an individual's character," and "eliminat[es] the use of the term "credibility.'" 2016 SSR LEXIS 4, 2016 WL 1119029, at *10 ("In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness[.]"). However, SSR 16-3p did not take effect until March 16, 2016, more than 11 months after the ALJ issued her decision in this case (on April 8, 2015). Even assuming that the ALJ's decision did not comport with SSR 16-3p, which the Court does not necessarily find, Plaintiff offers no authority for remanding the case based on retroactive application of SSR 16-3p.

In a similar vein, Plaintiff interprets the ALJ's decision as showing the ALJ's "bias [against] individuals who have become dependent, in part, [on] the drugs they were prescribed[.]" [Doc. 17] at 24. As Plaintiff sees it, the ALJ "attributed all her problems to drug

abuse or drug-seeking behavior." *Id.* at 23. In doing so, Plaintiff argues that the ALJ impermissibly substituted her own lay opinion for those of the medical professionals. *Id.*

For example, the ALJ found that when Plaintiff presented at the hospital in July of 2012, "[i]t appear[ed] that she was trying to get herself admitted to the hospital in order to get narcotics." Tr. 27. Plaintiff urges that the ALJ as biased against her and "played doctor" in making this finding. The Court disagrees. The finding it is supported by the record. Tr. 1356. The nursing consultation notes for July 25, 2012 read:

> Patient up to nursing station requesting medications, MD refusing to allow patient to have medications, patient becom[]ing loud and frust[]rated. Ambu[la]ted back to room (SNOK 1804)
> Pt. Requesting ativan at this time, MD aware, refusing to give meds. MD would like her to have Psych eval first, which was relayed to the pt. (KKK 19:00)
> . . . .
> Pt. being seen by psych leason [sic] at this time. (KKK 21:00)
> Pt. is upset because psych leason [sic] feels she does not meet criteria for admission. Pt. wants medication, and the MD said he will go see her in a while to discuss. Pt. did force herself to vomit, and then calmed down. (KKK 21:20)
> . . .
> Patient acting out, becoming loud, ag[g]ressive, demanding narcotics, I told her we will not give her any at this time, patient threatening to walk out, security called sitting outside door, told Patient behavioral health to arrive at approx 1300 (NOLL 10:35)
> Patient calmed down asleep, security left, sr up x 2 (NOLL 11:05)
> Food tray at bedside (DOMK 12:20)
> Pt requesting tylenol "the strongest dose you have" MD with another pt at this time, will make MD aware of pt[']s request when he is available. (DOMK 14:15)
> Pt standing in doorway upset that she has not gotten her tylenol yet. Unable to explain to pt that MD is not available at this time because she is verbally abusive and not listening to my explanation. Security called (DOMK 14:20)
> . . . .

12

> Security talking with pt. Pt continues to talk loudly and cursing. Will not sit down in room. Continues standing in doorway (DOMK 14:27)
> Pt requesting motrin for pain. MD aware. Request declined. (DOMK 15:15)

Tr. 1356–57 (all capitalization omitted). Plaintiff challenges another couple of similar findings attributing Plaintiff's mental limitation to her drug abuse, Tr. 29, and attributing some hospitalizations to "noncompliance and accidental overdoses of medications, rather than attempts to self-harm," Tr. 26. [Doc. 27] at 23. There is, however, support in the record for these conclusions. Even if the Court agreed with Plaintiff that the ALJ erred in basing her credibility determination on these conclusions, remand would not be warranted because the ALJ provided several other bases for her credibility determination. She cited numerous inconsistencies in the record that had nothing to do with Plaintiff's addiction. For instance, she noted that Plaintiff's complaints were inconsistent with her daily activities; she sought jobs that required work that would be precluded by the limitations she claimed (for example, standing all day as a waitress); she actually worked; she inconsistently reported the cause of her injuries; and she exaggerated her symptoms. Tr. 31. These were all valid considerations when evaluating Plaintiff's reported symptoms. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c). Plaintiff fails to show reversible error in the ALJ's credibility analysis.

## **Conclusion**

Plaintiff fails to show reversible error in the evaluation Dr. Sautter's opinion. She also fails to show reversible error at step five or in the ALJ's credibility analysis. The ALJ's decision will be affirmed.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 17] is **DENIED**. The Commissioner's final decision is affirmed.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**